**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| STEVEN SHERIS, on behalf of himself and all others similarly situated, | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | Civ. No. 07-2516 (WHW) |
| v. | : | |
| | : | |
| NISSAN NORTH AMERICA INC., | : | |
| | : | |
| Defendant. | : | |

**Walls, Senior District Judge**

Plaintiff Steven Sheris ("Plaintiff") brought this class action complaint on behalf of himself and all other persons in the State of New Jersey who purchased or leased a model year 2005 Infiniti G35 ("G35") having a defective rotor/caliper front brake assembly.  Plaintiff alleges several causes of action, including breach of warranty, breach of implied warranty, breach of contract, consumer fraud and violation of the Magnum-Moss Act.  Defendant Nissan North America Inc. ("Nissan" or "Defendant") now moves to dismiss the class action complaint pursuant to Federal Rules of Civil Procedure 12(b)(6).  Having considered the parties' written submissions and oral arguments, the Court will grant in part and deny in part Nissan's motion to dismiss.

## BACKGROUND

Plaintiff Steven Sheris is a resident of New Jersey and a lessee of a Nissan Infiniti 2005 G35.  Complaint at ¶¶ 7, 10, Sheris v. Nissan N. Am. Inc., No. 07-2516 (Dkt. Entry No. 1, filed

**NOT FOR PUBLICATION**

May 29, 2007) ("Compl."). Defendant Nissan North America Inc. ("Nissan") is a foreign

corporation, with its principal place of business and national headquarters located in Tennessee.

Id. at ¶ 8. Nissan designs, manufactures and sells automobiles and other vehicles under brands

such as Nissan and Infiniti throughout the United States. Id. Defendant's G35 are advertised,

distributed and sold through many dealerships in New Jersey. Id.

In May 2005, Plaintiff leased a new 2005 G35 vehicle from a Nissan dealership, Douglas

Infiniti, located in Summit, New Jersey. Id. at ¶ 10. Plaintiff believed from the dealership's

representations that the entire vehicle was in good condition and fit for its intended purpose. Id.

at ¶ 11. From May 2005 to February 2007, Plaintiff timely serviced the vehicle with the Nissan

dealership pursuant to the Owners Manual. Id. at ¶ 12. When the vehicle's odometer reached

approximately 20,000 miles, Plaintiff noticed that the parking, brake and SLIP lights were

simultaneously lit. Id. at ¶ 13. In January 2007, Plaintiff brought the vehicle to a Nissan

dealership for service and inspection. Id. at ¶ 14. On that date, the odometer registered at 20,618

miles. Id.

The dealership informed Plaintiff that the vehicle's brake pads were worn, the front rotors

were damages and they needed to be replaced. Id. at ¶ 17. Plaintiff was charged approximately

$450 for the repairs because, according to the Dealership, the limited warranty did not cover the

cost of the brake component replacement. Id. Defendant and the dealership considered the

damage to Plaintiff's brake system as being excluded by the "normal wear and tear" exclusion.

Id.

**NOT FOR PUBLICATION**

The service advisor informed Plaintiff that although it was unusual to have brake pads and rotors replaced in a vehicle at 20,000 miles, "[w]e have seen that with this Model." Id. at ¶ 18.  Plaintiff was also informed that the 2005 G35, just like the 2003 and 2004 G35 models, had a continuing problem with their brake rotors and caliper assemblies and these would need to be replaced frequently.  Id. at ¶ 19.  For the 2003 and 2004 G35 models, Nissan had a program covering the replacement of worn brake pads and rotors for the first three years or 36,000 miles.  Id. at ¶ 16.  Despite numerous complaints about problems with the 2005 G35's brake systems from 2005 G35 purchasers, Nissan did not extend the brake replacement to the 2005 G35 models.  Id. at ¶¶ 26-35.

On May 29, 2007, Plaintiff filed this class action on behalf of himself and all other persons in New Jersey who purchased or leased a model year 2005 Infiniti G35 ("G35") and which vehicle had or currently has a defective rotor/caliper front brake assembly.  Plaintiff alleges that Nissan "is responsible and liable for the cost of replacing the defective front brake assemblies" and brings seven causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violation of New Jersey's Consumer Fraud Act; (4) breach of contract; (5) declaratory relief; (6) violation of the Magnuson-Moss Warranty Act; and (7) punitive damages.  Id. at ¶¶ 6, 45-87.  On July 13, 2007, Defendant filed its motion to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and failure to plead with particularity pursuant to Fed. R. Civ. P. 9(b).

**NOT FOR PUBLICATION**

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). The Supreme Court has recently clarified the Rule 12(b)(6) standard in Bell Atlantic v. Twombly, 550 U.S. --, 127 S. Ct. 1955, 1965 (2007). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. Id. at 1965-66 (abrogating Conley's standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"; Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added)). This "entitlement to relief" requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 1964-65. In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. Id.

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In addition to the allegations of the Complaint, the Court may consider documents attached to or specifically referenced in the Complaint, and matters of

-4-

**NOT FOR PUBLICATION**

public record, without converting the motion to dismiss into one for summary judgment.  See

Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004); Sentinel Trust Co. v.

Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).  "Plaintiffs cannot prevent a court

from looking at the texts of the documents on which its claim is based by failing to attach or

explicitly cite them."  Id.  Any inquiry beyond the complaint and documents integral to the

complaint may require conversion of the motion into one for summary judgment.  Fed. R. Civ. P.

12(b).


**DISCUSSION**

Defendant attaches five exhibits to its motion to dismiss.  Exhibit 1 is the Superior Court

of California minute order dated January 24, 2006 and the second amended complaint in the

California litigation.  Exhibit 2 is the Superior Court of California minute order dated September

16, 2005 and the first amended complaint in the California litigation.  Exhibit 3 is the 2005

Infiniti Warranty (the "Warranty").  Exhibit 4 are excerpts from the 2005 Infiniti Owner's

Manual (the "Owner's Manual").  Exhibit 5 is the 2005 Infiniti Service & Maintenance Guide

(the "Maintenance Guide").

The Court will review the Warranty, the Owner's Manual and the Maintenance Guide

without converting this motion to dismiss into one for summary judgment because the Complaint

specifically relies on these documents.  Compl. at ¶¶ 4, 5, 12, 15, 21, 23, 46, 47, 49, 50; see also

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document

integral to or explicitly relied upon in the complaint" may be considered "without converting the

**NOT FOR PUBLICATION**

motion [to dismiss] into one for summary judgment."). Also, the amended complaints and

Superior Court of California minute orders in the California Nissan Infiniti litigation are matters

of public record, which this Court may also consider in a motion to dismiss. Mele, 359 F.3d at

255 n.5. This Court will consider the California litigation to the extent that it is relevant, but that

case is in no way binding here.

### I.     Breach of Warranty

Plaintiff's G35 is currently under warranty because, at the time of the complaint, the G35

has an odometer reading of about 20,618 and had been driven for about two years. The Warranty

coverage period is for 60,000 miles or 48 months, whichever comes first. Warranty at 5.

Defendant advances two arguments for dismissal. First, the Warranty by its express terms

excludes the cost of repairing and replacing worn brake pads and rotors because the repair costs

fall either in the warranty exclusion of "normal wear and tear" or "normal maintenance service."

Second, Plaintiff fails to allege any industry standard for how long brake pads and rotors should

last.

The Warranty provides in relevant part that Nissan "covers any repairs needed to correct

defects in materials or workmanship of all parts and components of each new Infiniti vehicle

supplied by Nissan except for those exclusions or items listed under the caption 'WHAT IS NOT

COVERED' or as indicated below." Warranty at 5. "Warranty repairs will be made at no charge

for parts and/or labor." Id. at 6. The "WHAT IS NOT COVERED" section in the Warranty

**NOT FOR PUBLICATION**

provides in relevant part that "[t]his warranty does not cover damage, failure or corrosion

resulting from . . . [n]ormal wear and tear, including dings, dents, chips or scratches." Id. at 6.

The Maintenance Guide provides a maintenance log for the G35. See Maintenance

Guide.  Inspection of the brake calipers, pads, and rotors of the vehicle is first recommended at

7,500 miles or 6 months in the maintenance log and every 7,500 miles thereafter. Id. at 13.

Variances in the expected wear and tear on the brake assembly are anticipated in the maintenance

log, with differences in driving conditions and driving styles contributing to different rates of

wear. See Owner's Manual at 5-26 to 5-27 (referring to "increased wear on the brakes and

pads").  "Proper brake inspection intervals should be followed." Id. at 8-23.  The Owner's

Manual informs customers that "[w]hen a brake pad requires replacement, it will make a high

pitched scraping or screeching sounds when the vehicle is in motion whether or not the brake

pedal is depressed." Id. at 8-23.  On page 9 of the Maintenance Guide, titled "EXPLANATION

OF SCHEDULED MAINTENANCE ITEMS," subsection "Brake Calipers, Pads, Rotors," the

Maintenance guide provides: "Check for wear, deterioration and fluid leaks.  Replace any

deteriorated or damaged parts immediately."  Maintenance Guide at 9.

Plaintiff counters that the necessary repairs to his G35 resulted from "defects in material

and workmanship," which are covered under the Warranty.  Specifically, the "rotors . . . in the

2005 G35 . . . are too thin and/or varying in thickness and not in conformance with the customary

thickness and uniformity which would otherwise be standard in the industry." Compl. at ¶ 24.

"[T]he premature wearing, grinding and premature failure of the brakes is caused by a product

defect" which would cause "a potentially dangerous driving condition if not corrected."  Compl.

**NOT FOR PUBLICATION**

at ¶ 35.  Plaintiff argues that he is not required to allege an industry standard at the motion to dismiss stage but simply state a claim for a breach of warranty.

The Court denies Nissan's motion to dismiss Plaintiff's breach of warranty claim because Plaintiff's allegations, if true, support a reasonable interpretation that the Warranty would cover Plaintiff's repair costs.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002) (explaining that a district court must treat factual allegations as true and draw reasonable inferences from them on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).  Under New Jersey law, interpretation and construction of a contract is a matter of law for the court.  High Point Ins. Co. v. ADT Sec. Services, Inc., No. 05-3704, 2006 WL 1805893, *2 (D.N.J. Jun. 29, 2006).  A writing is to be given a reasonable interpretation.  Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC, No. 06-03543, 2007 WL 2156367, *2 (D.N.J. Jul. 25, 2007).

The Court will treat following factual allegations as true and will draw reasonable inferences from them: (1) that Plaintiff routinely took his car for inspections; (2) that Plaintiff drove his 2005 G35 for two years and about 20,618 miles without problems; (3) that at around 20,000 miles, Plaintiff noticed that his 2005 G35's parking, brake and SLIP lights came on; (4) his car's braking system was inspected; and (5) Plaintiff paid $450 to repair and replace his brake pads and rotors at about 20,618 miles.  Defendant does not dispute these allegations.  The Court will also treat the following factual allegations as true, despite Nissan's factual dispute with them: (1) that the rotors varied in thickness and caused the premature failure of his brakes; and (2) a Nissan service advisor told Plaintiff that although replacing the brake pads and rotors were unusual, he has seen that happen with this model.

**NOT FOR PUBLICATION**

In light of these factual allegations, the two main issues are: (1) whether the type of problem Plaintiff experience with his G35 is covered under the Warranty as "defects in materials or workmanship" or excluded under the Warranty as "normal wear and tear" or "normal maintenance services"; and (2) whether that problem was premature.  These issues are better dealt with at the summary judgment stage when the parties can present evidence to prove if a defect in material and design caused the premature wearing of the brake pads and rotors or whether it was normal wear and tear.  The same is true about proving an industry standard for how long brake pads and rotors should last.  At the pleading stage, the Court finds that Plaintiff sufficiently alleged a claim for breach of warranty.  Defendant's motion to dismiss is denied.

        **II.**        **Breach of Contract**

Defendant simply states that there are no agreements between Defendant and Plaintiff except for the warranty.  Defendant is not a party to Plaintiff's lease agreement with the dealership.  Any allegations of a breach of contract is the same as Plaintiff's claim for breach of warranty in the first cause of action in the Complaint.  Plaintiff does not seem to dispute the argument that its breach of contract claim is based on the Warranty.  In Plaintiff's opposition brief, he writes: "These allegations can only be read to identify the Basic Warranty as creating a contractual obligation on the part of Nissan to provide vehicles free of defects and to repair 'at no costs' defects in material, workmanship, or factory preparation."  Pl.'s Opp. Brief at 29.  Defendant's failure to satisfy its obligation under the Warranty is a breach of contract.

Although Plaintiff's breach of contract claim may be based on the same rights he has under the Warranty, the Court denies Defendant's motion to dismiss Plaintiff's breach of contract

**NOT FOR PUBLICATION**

pursuant to Fed. R. Civ. P. 8(a)(3), which permits a party to plead in the alternative.  As stated,

Plaintiff has met the standard for pleading a cause of action for breach of warranty.

### III.      Breach of Implied Warranty

New Jersey state courts "have previously described new car warranty obligations as

having been 'given directly by the manufacturer through [the dealer] to the ultimate consumers,'

including the lessee." Ryan v. Am. Honda Motor Corp., 376 N.J. Super. 185, 195, 869 A.2d 945,

951-52 (N. J. Super. App. Div. 2005) (quoting Miller Auto Leasing Co. v. Weinstein, 189 N.J.

Super. 543, 546, 461 A.2d 174, 176 (N.J. Sup. Ct. Law Div.1983), aff'd o.b., 193 N.J. Super.

328, 473 A.2d 996 (N. J. Sup. App. Div.), cert. denied, 97 N.J. 676, 483 A.2d 192 (1984).  An

implied warranty of merchantability in a lease contract is governed by N.J.S.A. 12A:2A-212.

N.J.S.A. 12A:2A-212 provides in relevant part that "(1) Except in a finance lease, a warranty that

the goods will be merchantable is implied in a lease contract if the lessor is a merchant with

respect to goods of that kind.  (2) Goods to be merchantable must be at least such as . . . (c) are fit

for the ordinary purposes for which goods of that type are used." N.J.S.A. 12A:2A-212(1) &

(2)(c).

Defendant contends that because Plaintiff was able to drive his G35 for 20,618 miles and

for about two years before he needed to replace his brake pads and rotors, his G35 was fit for its

ordinary purpose of providing basic transportation.  Plaintiff fails to allege any facts that his G35

was unfit for its ordinary purpose.

**NOT FOR PUBLICATION**

Here, the Court agrees with Defendant's reasoning.  In addition to the allegations set forth in Plaintiff's claim for breach of warranty, Plaintiff further alleges that Nissan breached the implied warranty of merchantability "because the front brake assemblies that Nissan installed in the vehicles was not of merchantable quality at the time the vehicles were sold" and "Nissan had prior knowledge and notice of the detective nature of the vehicles' front brake assemblies . . ." Compl. at ¶¶ 57, 58.  During the March 19, 2008 hearing, Plaintiff's counsel argued that the G35 was unfit for its ordinary purpose because it failed to provide safe transportation.  Plaintiff's contentions that the G35 was not of merchantable quality and unsafe for driving are legal conclusions which the Court does not have to accept on a Fed. R. Civ. P. 12(b)(6) motion.  Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977).  In light of the undisputed facts that Plaintiff was able to drive his G35 for 20,618 miles and for about two years before he needed to replace his brake pads and rotors, Plaintiff has failed to allege factually what made his G35 unmerchantable or unsafe for driving.

"The weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts" where plaintiffs have driven their cars without problems for years.  In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., Nos. 96-3125, 96-1814, 96-3198 (JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997) (citing Yost v. General Motors Corp., 651 F. Supp. 656 (D.N.J. 1986); Feinstein v. Firestone Tire & Rubber Co., 535 F.Supp. 595, 602 (S.D.N.Y. 1982); Ford Motor Co. v. Fairley, 398 So.2d 216, 218 (Miss. 1981).  Merchantability does not mean that "the goods are exactly as the buyer expected, but rather that the goods satisfy a minimum level of quality."  Id.  For an

-11-

**NOT FOR PUBLICATION**

automobile, the implied warranty of merchantability is breached only when a defect "renders the

vehicle unfit for its ordinary purpose of providing transportation for its owner." Id.

Accordingly, Plaintiff's claim for breach of implied warranty is dismissed without

prejudice.  If Plaintiff deems feasible, it may seek leave to amend.


**IV.    New Jersey Consumer Fraud Act**

Defendant argues that Plaintiff has failed to allege (1) that Nissan made false

representations to Plaintiff regarding the G35; (2) that Plaintiff suffered an "ascertainable and

measurable loss"; (3) what made the G35 "unreasonably dangerous"; and (4) what the industry

standard is for the durability of brake pads and rotors.  Defendant asks the Court to dismiss

Plaintiff's New Jersey Consumer Fraud Act ("NJ CFA") claim pursuant to Fed. R. Civ. P. 9(b)

and 12(b)(6).

The pleading with particularity standard in Federal Rules of Civil Procedure 9(b) applies

to fraud claims under the NJ CFA.  Frederico v. Home Depot, 507 F.3d 188, 200-01 (3d Cir.

2007).  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a

person may be averred generally." Fed. R. Civ. P. 9(b).  The allegations must place the defendant

on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361

F.3d 217, 223-224 (3d Cir. 2004).  "To satisfy this standard, the plaintiff must plead or allege the

date, time and place of the alleged fraud or otherwise inject precision or some measure of

substantiation into a fraud allegation." Fredico, 507 F.3d at 200.

**NOT FOR PUBLICATION**

The New Jersey Consumer Fraud Act provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J.S.A. 56:8-2.  Common-law fraud requires proof of reliance, while consumer fraud requires only proof of a causal nexus between concealment of material fact and the loss.  Varacallo v. Massachusetts Mut. Life Ins. Co., 332 N.J. Super. 31, 752 A.2d 807 (N.J. Super. App. Div. 2000).

The Court finds that Plaintiff has sufficiently pleaded a NJ CFA claim under both Fed. R. Civ. P. 9(b) and 12(b)(6).  Plaintiff has met the specificity requirement in Fed. R. Civ. P. 9(b) because Plaintiff alleges facts indicating the make and model of the vehicle, the date of purchase, the name of the responsible party, the vehicle defects, and the cost of repair.  See Lubitz v. DaimlerChrysler Corp., BER-L4883-04 (Hon. Sybil R. Moses, Bergen Co. Sup. Ct. Jan. 27, 2005); Talalai v. Cooper Tire & Rubber Co., 360 N.J. Super. 547 (N.J. Super. Law Div. 2001).

As stated, Plaintiff has sufficiently alleged the elements for a breach of warranty claim, which included factually allegations regarding a defective brake assembly.  For a NJ CFA claim, Plaintiff also needs to allege facts that Defendant either engaged in an affirmative act, such as "any unconscionable commercial practice, deception, fraud, false pretense, false promise,

**NOT FOR PUBLICATION**

misrepresentation," or "the knowing[ ] concealment, suppression, or omission of any material

fact." N.J.S.A. 56:8-2. The NJ CFA "specifies the conduct that will amount to an unlawful

practice in the disjunctive" and "[p]roof of any one of those acts or omissions or of a violation of

a regulation will be sufficient to establish unlawful conduct under the Act." Cox v. Sears

Roebuck & Co., 138 N.J. 2, 19, 647 A.2d 454, 462-63 (1994).

Here, Plaintiff states that Defendant knew or should have known about the defective

brake assemblies but concealed it. Plaintiffs support this conclusion with the following factual

allegations, which this Court takes as true: The Nissan dealer informed him that "there was a

design and manufacturing defect in the front rotors and caliper assemblies" and "that the rotors

themselves were defective and that the entire braking system was defectively engineered."

Compl. at ¶ 19. Plaintiff also alleges that "Nissan, through its dealerships, agents, servants and

employees, was put on actual and/or constructive notice of the defective front brakes" and "failed

to disclose the existence and nature of said defects." Compl. at ¶ 20. Plaintiffs provided

additional alleged facts that Nissan should have known about the defects in the 2005 G35

because Nissan had the same problems with the 2003 and 2004 G35. Id. at ¶¶ 16, 22. Plaintiff

alleges that he relied on Defendant's misrepresentation or failure to disclose. Id. at ¶ 66.

Accordingly, Defendant's motion to dismiss Plaintiff's NJ CFA claim is denied.


V.      **Magnum-Moss Act**

Plaintiff asserts two Magnuson-Moss claims, one as a breach of a written warranty and

one as a breach of an implied warranty. The Magnuson-Moss act provides in relevant part that

**NOT FOR PUBLICATION**

"[s]ubject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure

of a supplier, warrantor, or service contractor to comply with any obligation under this chapter,

or under a written warranty, implied warranty, or service contract, may bring suit for damages

and other legal and equitable relief."  15 U.S.C. § 2310(d)(1).  A "written warranty" is "any

written affirmation of fact or written promise made in connection with the sale of a consumer

product by a supplier to a buyer which relates to the nature of the material or workmanship and

affirms or promises that such material or workmanship is defect free . . . which written

affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier

and a buyer for purposes other than resale of such product."  15 U.S.C.A. § 2301(6).  An

"implied warranty" as "an implied warranty arising under state law . . . in connection with the

sale by a supplier of a consumer product."  15 U.S.C.A. § 2301(7).

Defendant argues that because Plaintiff failed to use the mandatory dispute settlement

mechanism specified in the Warranty before filing the Complaint, Plaintiff is barred from

asserting a claim pursuant to the Magnuson-Moss Warranty Act.  Plaintiff has offered no

opposition to Defendant's motion to dismiss the Magnuson-Moss Act claim.  Nevertheless, the

Court will examine the merits of Defendant's motion.

The Magnuson-Moss Act provides that in a class action complaint, "a class of consumers

may not proceed in a class action . . . unless the named plaintiffs initially resort to such [informal

dispute settlement] procedures."  15 U.S.C. § 2310(3)(C)(ii).  Where the warrantor has provided

a valid informal dispute resolution mechanism, a claimant must first exhaust that mechanism

before filing a Magnuson-Moss claim.  15 U.S.C. § 2310(a)(3)(C).  The limited warranty

**NOT FOR PUBLICATION**

accompanying the G35 explicitly provides for alternative dispute settlement through the Better

Business Bureau's BBB Auto Line.  "Infiniti makes available to you, and you are specifically

required by federal law to use BBB AUTO LINE [(800) 955-5100] before exercising rights or

seeking remedies under the Federal Magnuson-Moss Warranty Act."  Warranty at 5.

The Court finds that Plaintiff has not exhausted the dispute settlement procedures set

forth in the Warranty and thus cannot assert his Magnuson-Moss claims.  Accordingly,

Defendant's motion to dismiss Plaintiff's Magnuson-Moss claim is granted.

## VI.    Declaratory Judgment and Punitive Damages

In Plaintiff's fifth cause of action seeking declaratory judgment, Plaintiff alleges that

"[t]here is a justiciable dispute as to whether the defective braking systems are and/or should be

covered under the warranty by defendant."  Compl. at ¶ 79.  Because the Court has already found

that Plaintiff has sufficiently alleged a claim for breach of warranty, Defendant's motion to

dismiss Plaintiff's claim for declaratory judgment is similarly denied.

Lastly, Defendant moves to dismiss Plaintiff's claim for punitive damages.  To claim

punitive damages under New Jersey law, a party must claim "actual malice" or "wanton and

willful disregard" of a person who might be harmed by defendant's acts or omissions .  N.J.S.A.

2A:15-5.12.  "Punitive or exemplary damages have traditionally been reserved for civil wrongs

characterized as torts."  Sandler v. Lawn-A-Mat Chem. Equip., 141 N.J. Super. 437, 448-50, 358

A.2d 805 (App. Div.1976).  To recover punitive damages in common law, plaintiffs must

demonstrate "actual malice," which is "intentional wrongdoing-an evil-minded act or an act

accompanied by a wanton and wilful disregard of the rights of another."  Id. (internal quotations

**NOT FOR PUBLICATION**

omitted).  "In the absence of exceptional circumstances dictated by the nature of the relationship between the parties or the duty imposed upon the wrongdoer, the concept of punitive damages has not been permitted in litigation involving breach of a commercial contract."  Id. at 449, 358 A.2d 805.  Exceptions have been carved out where "the unusual relationship between the parties reflects a breach of trust beyond the mere breach of a commercial contract."  Id.

Notwithstanding, at this stage, without discovery, Defendant's motion to dismiss Plaintiff's claim for punitive damages is premature.  This motion is denied without prejudice to seek renewal.

## CONCLUSION

The Court grants in part and denies in part Defendant's motion to dismiss Plaintiff's complaint.

June 2nd, 2008                                    **s/William H. Walls**
                                                 United States Senior District Judge